**THE LAW OFFICES OF DAVID CARLEBACH, ESQ.**
55 Broadway
Suite 1902
New York, NY 10006
David Carlebach
Tel: (212) 785-3041
Fax: (347) 472-0094
Email: david@carlebachlaw.com

*Proposed Attorney for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re:                                                    **Chapter 11**


        **16TH STREET REGENCY LLC,**               **Case No. 14-46104 - NHL**


                              **Debtor.**
-------------------------------------------------------x

**DEBTOR'S APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 105, 361
AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 4001(b) (A) AUTHORIZING THE INTERIM USE OF CASH
COLLATERAL *NUNC PRO TUNC* PENDING HEARING (B) SCHEDULING INTERIM
AND FINAL HEARINGS AND (C) ISSUING AN ORDER TO SHOW CAUSE**

**TO THE HONORABLE NANCY HERSHEY LORD,**
**UNITED STATES BANKRUPTCY JUDGE:**

        16th Street Regency LLC, the debtor herein (the "Debtor"), by its proposed counsel, the

Carlebach Law Group, respectfully states as follows:

                    **SUMMARY OF REQUESTED RELIEF**

        1.      By this application (the "Application"), the Debtor seeks (a) an order to show

cause to consider a further order authorizing the Debtor to use Cash Collateral (as defined below)

of Tissa 16th Corp. (as defined below "Tissa") and provide adequate protection to Tissa, *nunc pro

tunc* pending an interim hearing, (b) an interim hearing to consider the use of Cash Collateral in

accordance with the budget (the "Budget") annexed hereto as Exhibit D pursuant to an interim

order (the "Interim Order"), (c) a hearing to consider entry of a final order authorizing the use of Cash Collateral in accordance with the Budget and (d) entry of a final order (the "Final Order") authorizing use of Cash Collateral. A copy of the proposed Order to Show Cause is annexed hereto as Exhibit A, a copy of the proposed Interim Order is annexed hereto as Exhibit B and a copy of the proposed Final Order is annexed hereto as Exhibit C.

2.      The Debtor requires the immediate use of Cash Collateral to pay for certain pressing ordinary course operating expenses in connection with its ordinary course of business. The Debtor will use the Cash Collateral for the sole purpose of protecting, preserving and improving the Property (defined below). Such uses include, among other things, bank charges, maintenance, repairs and similar operating expenses. The amount of Cash Collateral to be used for the period from January 15, 2015 through March 15, as set forth in the Budget, is approximately $33,259.80, or $11,086.60 per month.

3.      The amount of Cash Collateral generated from rental income during the same period is approximately $51,825.00 or $17,275.00 per month. The Debtor will suffer irreparable harm to its business if it is not permitted to use Cash Collateral on an interim basis pending a final hearing.

4.      The estimated value of the Property is $4,000,000.00.

5.      Upon information and belief, the amount due to Tissa including principal, taxes, late fees and default interest due as of February 27, 2014 is $3,933.573.04. This amount does not include the amounts due for attorneys' fees.[1]

6.      Under the Interim Order, the Debtor will be authorized to use Cash Collateral in the ordinary course of its business in accordance with the Budget until entry of the Final Order. Tissa will receive, as adequate protection for the diminution in the value of the Cash Collateral

---

[1] Upon information and belief, attorneys' fees have been waived.

caused by the Debtor's use, (a) replacement liens on and security interests in (to the extent of such diminishment) the Debtor's post-petition assets, including its rent receipts, to the same extent that Tissa's existing liens on the Debtor's assets are valid and perfected, subject to a carve-out for (i) the fees of the United States Trustee and (ii) the payment of fees and expenses of any chapter 7 trustee and any chapter 7 professionals in an aggregate amount as may be agreed to by Tissa and (b) a superpriority post-petition claim pursuant to sections 361 and 363(e) of the Bankruptcy Code.[2]

## JURISDICTION AND STATUTORY BASES

7.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§157 and 1334.

8.    Venue in this District is proper pursuant to 28 U.S.C. §§1408 and 1409.

9.    This matter is a core proceeding pursuant to 28 U.S.C. §157.

10.    The statutory bases for this Application are Sections 361, 363(c)(2)(3) and 363(e) of the Bankruptcy Code, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-5 of the Local Rules of this Court.

## GENERAL BACKGROUND

11.    On December 3, 2014, the Debtor filed a petition for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

---

[2] There is no provision for a carve-out for the Debtor's or any committee's professionals at this interim stage. A carve out for the professionals retained by the Debtor and any committee is addressed in the Final Order.

12.     The Debtor owns, *inter alia*, real estate with a street address of 198-210 16th Street, units 1D, 4A, 4H and 5J, Brooklyn, NY (the "Property").[3]

13.     The Debtor is authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

14.     No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

15.     Upon information and belief, the Property is comprised of   four (4) condominium apartments.

## THE LOAN DOCUMENTS

16.     Tissa is, upon information and belief, the mortgagee of the Property, allegedly holding a lien of various mortgages consolidated pursuant to a mortgage note, dated June 25, 2008 (the "Note"), and a mortgage modification, consolidation and extension agreement, dated June 25, 2008 (the "Mortgage"), in the principal amount of $1,900,000.00. Pursuant to the Mortgage, Tissa holds a lien on substantially all assets of the Debtor including, among other things, the furniture, fixtures and equipment at the Property, and the leases, rents, revenues, income and insurance proceeds generated by the Property.[4]

## THE CASH COLLATERAL

17.     Cash Collateral is defined at §363(a) of the Bankruptcy Code.   The Cash Collateral generally consists of the rents, revenues, income, insurance proceeds (if any) and profits generated by the Property ("Cash Collateral").

---

[3] The Property is also identified as Block 1053, Lots 1204, 1223, 1230 and 1232.
[4] The Debtor reserves all rights to contest the Mortgage as, among other things, unperfected, and to contest all of the obligations under the Note and Mortgage.

## REQUESTED RELIEF

18.     The Debtor requests, in accordance with Rule 4001 of the Bankruptcy Rules, that the Court first conduct an emergency preliminary hearing authorizing its immediate use of Cash Collateral, in accordance with the terms of the Interim Order, and that the Court schedule, and thereafter conduct, a final hearing (the "Final Hearing") to consider entry of the Final Order not less than fourteen (14) days after service of this Application, to authorize more permanent use of Cash Collateral on terms substantially similar to those set forth in the Final Order.

19.     The Cash Collateral is either cash or the cash proceeds of collateral subject to liens and security interests in Tissa's favor.

20.     The need for the Debtor's use of Cash Collateral is best illustrated by the Budget prepared by the Debtor, a copy of which is annexed hereto as **Exhibit D**. The Budget demonstrates that for the period from January 15, 2015 through March 15, 2015, the Debtor anticipates that it will collect approximately $51,825.00 from rental income. During that same time it anticipates cash disbursements of approximately $33,259.80. The Debtor believes, and respectfully asserts, that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered.

21.     Of the amount to be disbursed during period from January 15, 2015 through March 15, 2015, the largest amounts expended will be for maintenance charges ($11,455.80, or $3,818.60 per month) and management fees ($2,250.00, or $750.00 per month).  Without the use of Cash Collateral, the Debtor will be unable to meet these obligations.

22.     In short, the vast bulk of the monies anticipated to be disbursed by the Debtor over the period from January 15, 2015 through March 15, 2015, and until such time as the Court can hold a final hearing, are for required payments necessary to maintain the Debtor's business.

23.     There are other items in the budget which are, on the whole, smaller in scale, but are nonetheless necessary and essential if the Debtor is to maintain a healthy, viable and ultimately successful business.

24.     As set forth above, under the Interim Order, the Debtor will be authorized to use Cash Collateral in the ordinary course of its business in accordance with the Budget until entry of the Final Order. Tissa will receive, as adequate protection for the diminution in the value of the Cash Collateral caused by the Debtor's use, (a) replacement liens on and security interests in (to the extent of such diminishment) the Debtor's post-petition assets, including its rent receipts, to the same extent that Tissa's existing liens on the Debtor's assets are valid and perfected, subject to a carve-out for (i) the fees of the United States Trustee and (ii) the payment of fees and expenses of any chapter 7 trustee and any chapter 7 professionals in an aggregate amount as may be agreed to by Tissa and (b) a superpriority post-petition claim pursuant to sections 361 and 363(e) of the Bankruptcy Code.[5]

25.     The Debtor submits that through the granting of these replacement liens and superpriority claims, Tissa will be adequately protected. As set forth above, the current debt is approximately $3,933.573.04 as of February 27, 2014.

26.     The Interim Order and Final Order contain a reasonable list of Events of Default. These include dismissal of the case, appointment of a trustee or an examiner with expanded powers, or material breach of the Order. The Interim Order also permits the Debtor and/or any Creditors' Committee (should one be appointed) to challenge any pre-petition liens granted to the Lenders at any time.

---

[5] There is no provision for a carve-out for the Debtor's or any committee's professionals at this interim stage. A carve out for the professionals retained by the Debtor and any committee is addressed in the Final Order.

6

27.     The Debtor respectfully points out that the right to a security interest in post-petition cash collateral is not automatic.  Under §552(b) of the Bankruptcy Code, a secured creditor has a security interest in profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise" (emphasis added).

28.     As indicated in the legislative history, the exception to the secured creditor's blanket security interest in post-petition rent receipts and profits was specifically enacted so as to allow for the expenses of maintenance and improvement in the collateral to be borne out of the proceeds which it generates. S. Rep. No. 989, 95th Cong. 2d Sess. 91(1978).  Moreover, as an expense necessary for protecting and preserving the collateral, the collateral and its proceeds would be properly accessible under § 506(b) of the Bankruptcy Code.

29.     The Debtor, therefore, seeks, in conformance with the applicable provisions of the Bankruptcy Code, authorization to use the Cash Collateral solely for the purpose of meeting the actual and necessary expenses of the Property.  Despite the Debtor's best efforts, the Debtor has been unable to obtain financing from any other source for meeting such expenses.  Tissa has refused to allow the Debtor interim use of its Cash Collateral.

[INTENTIONALLY LEFT BLANK]

## INTERIM RELIEF INCLUDING (A) *NUNC PRO TUNC* USE OF CASH COLLATERAL AND (B) ORDER TO SHOW CAUSE

**Request for *Nunc pro Tunc* use of Cash Collateral**

30.     Pending a hearing and determination of the Debtor's application, the Debtor requests that the Court authorize the Debtor's use of Cash Collateral to the extent necessary to avoid immediate harm to the Property.

31.     The Debtor seeks *nunc pro tunc* authorization to use the Cash Collateral generated by its business, solely for the purpose of protecting, preserving and improving the business in accordance with the Budget.

32.     As adequate protection to Tissa, the Debtor respectfully requests that Tissa be granted the identical protections as under the Interim Order.

33.     The Debtor must pay ongoing expenses of the business: repairs, maintenance charges, management fees, etc.  It goes without saying that the timely payment of the above expenses is critical to the preservation of the value of the business and in the best interest of the Debtor's estate.

**Request for Order to Show Cause**

34.     Pursuant to Local Bankruptcy Rule 9077-1(a), "[a]n order to show cause shall be based on an affidavit or an affirmation showing reasons why proceeding other than by notice of motion is necessary. The affidavit or affirmation also shall state whether a previous application for similar relief has been made."

35.     As set forth in the accompanying affirmation of David Carlebach, the Debtor requires the immediate use of Cash Collateral to pay for certain pressing ordinary course operating expenses in connection with its ordinary course of business.  The Debtor will use the Cash Collateral for the sole purpose of protecting, preserving and improving the Property (as

defined in the Application). Such uses include, among other things, management fees, repair payments for the Property and similar operating expenses.

36.    Normal motion practice in this District is governed by Bankruptcy Rules 9014 and 9006 and by Local Bankruptcy Rule 9006-1, which requires that motions be served "at least fourteen (14) days before the return date."

37.    In addition, the Debtor requires the use of Cash Collateral *nunc pro tunc*, which cannot be obtained through normal motion practice.

38.    Due to the urgency of the Debtor's cash requirements as set forth above and in the Application, if the Debtor is prohibited from using Cash Collateral for the expenses set forth in the Application, the Debtor will likely suffer irreparable harm and the cessation of its business.

## THE FINAL ORDER

39.    In order to comply with Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Final Hearing be scheduled on the minimum fourteen (14) days notice provided for therein for final authorization to use Cash Collateral in accordance with the Final Order.

## NOTICE

40.    No trustee, examiner or statutory creditors' committee has been appointed in this Case. Notice of this Motion has been provided by providing a copy of the Motion to (a) the U.S. Trustee; (b) the Debtor's twenty (20) largest creditors, by their respective counsel, if known; (c) all of the Debtor's secured creditors, by their respective counsel, if known, and (d) all entities that have filed and served upon the Debtor a notice of appearance and request for service of documents. The Debtor submits that no other or further notice need be provided.

41.    The Debtor respectfully requests that the Court enter the Interim Order authorizing the immediate use of Cash Collateral and that the entry of the Interim Order be

deemed consistent with and part of a preliminary hearing held in accordance with Rule 4001(b) of the Bankruptcy Rules. The Debtor respectfully submits that it has demonstrated that there is no genuine dispute that Tissa is Adequately Protected until the Final Hearing by the replacement liens to be granted pursuant to the Interim Order. The Debtor further submits that it has demonstrated that entry of the Interim Order is necessary to enhance and preserve the value of the Debtor's businesses and the assets of its estate.

42.    The preliminary hearing is required to avoid the irreparable harm that will result if the Debtor is unable to pay its employees, pay rent and continue operating its business.

43.    Finally, the Debtor requests that the Final Hearing on the use of Cash Collateral be scheduled as quickly as this Court's calendar permits. Notice will be provided in accordance with the Interim Order and Rule 4001 (b) or such other notice order as the Court may direct.

44.    For the reasons set forth above, and based upon the record (including any testimony or documentary evidence that the Court might request), it is respectfully submitted that the grounds for entry of the Interim Order exist and the relief requested is necessary.

### <u>NO PREVIOUS OR OTHER APPLICATION</u>

45.    No previous or other application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court (a) enter the proposed order to show cause, (b) enter the Interim Order, (c) authorize the Debtor to use the revenue generated by the Property for the purpose of protecting, preserving and improving the Property in accordance with the Budget, (d) schedule a hearing to consider the Final Order and (e) grant such other, further and different relief as is just and proper.

Dated: New York, New York
       December 18, 2014

**THE LAW OFFICES OF DAVID CARLEBACH, ESQ.**
*Proposed Attorneys for the Debtor*

By:      */s/ David Carlebach*
         55 Broadway
         Suite 1902
         New York, New York 10006
         Tel:  (212) 785-3041
         Fax: (347) 472-0094
         Email: david@carlebachlaw.com

Index of Exhibits

Exhibit A: Proposed Order Shortening Time

Exhibit B: Proposed Interim Order

Exhibit C: Proposed Final Order

Exhibit D: Budget